## MATTHEWS & CO. v. CANTEY.

COMPLAINT—PRACTICE—PARTIES—DISMISSAL — FORECLOSURE. — It is proper to dismiss a complaint by a transferee of a note and mortgage, when it appears by proof that since the action was commenced the plaintiff has parted with *all interest* in the papers, and that they have been assigned to another party, who now owns them, and is not made a party because of the objection of plaintiff. Secs. 132 and 142 of Code considered.

Before ALDRICH, J., Barnwell, April, 1896. Affirmed.

Action in foreclosure by C. G. Matthews & Co. against Sallie Rebecca Cantey and J. A. Cantey. Complaint dismissed. Plaintiffs appeal.

*Mr. I. L. Tobin*, for appellants, cites: Code, 142.

*Messrs. A. B. Connor* and *R. J. Brown*, contra, cite: Code, 142, 132, 143, 134, 133; 35 S. C., 462.

March 29, 1897. The opinion of the Court was delivered by

MR. JUSTICE JONES. On the 14th day of November, 1893, the defendant, Mrs. Sallie Cantey, executed and delivered to Mrs. Ida All three promissory notes, each for $233.33. with interest at eight per cent. until paid, the first note due October 1st, 1894, the second, October 1st, 1895, and the third, October 1st, 1896, and, to secure payment, executed a mortgage on a tract of land. Some time thereafter, before maturity of the notes, Mrs. Ida All endorsed the notes and mortgage to W. A. All, jr., & Co. Thereafter W. A. All, jr., & Co. endorsed same or assigned same to the plaintiff, as collateral security for a debt due plaintiffs by said All & Co. Then, on May 6, 1895, after maturity of the first note, plaintiffs began this action to foreclose the mortgage. Defendants answered, setting up three defenses: 1st, a general denial; 2d, that she, Mrs. Cantey, was a married woman at the time of the execution of the notes

and mortgage, and that the money was borrowed and used
to pay her husband's debts; 3d, payment—relying, however,
principally on the second defense.    The issues were referred
to the master, Hon. A. Howard Patterson, and at a reference
held February 15th, 1896, the testimony of plaintiffs showed
that the debt due by All & Co. to plaintiffs, to secure which
the said notes and mortgage had been assigned as collateral,
had been paid in full, since the suit was brought, and that
plaintiffs no longer had any interest in said notes and mort-
gage.    It further appeared that since the commencement of
this action the notes and mortgage had been assigned by
W. A. All & Co. to Thomas M. Philpot, of Augusta, Ga.,
as collateral security.    It seems, also, so Judge Aldrich
found, that the notes and mortgage are still in the custody
of the plaintiffs or their attorney, and the assignment of All
& Co. to Philpot was made subject to the assignment to
plaintiffs.    Neither Philpot nor W. A. All & Co. were
parties to this suit.    On motion of the defendant, the master
made an order requiring that Thomas M. Philpot be sub-
stituted as plaintiff in this action, with leave of defendant
to answer.    Plaintiffs appealed to the Circuit Court from
this order and succeeded in getting it reversed.    The order
of Judge Aldrich, reversing the master's order, adjudged
simply that it was error to order that Philpot be substituted
as plaintiff, ruling, that while Philpot had the right to be-
come plaintiff if he so desired, he could not be compelled
to become plaintiff.    With this ruling the case was re-
manded to the master for such determination as might be
proper.    On May 5, 1896, the master held another reference
for the purpose of hearing the cause or entertaining any
motion.    Defendants' counsel moved to dismiss the com-
plaint, or that Philpot be made a party defendant, which
was resisted by plaintiffs.    The master, after reciting the
facts, dismissed the complaint, under section 132, Code of
Procedure, requiring that "every action must be prosecuted
in the name of the real party in interest."    Plaintiffs ap-
pealed to the Circuit Court, and Judge Benet confirmed the

master's order dismissing the complaint, but without prejudice to the real party in interest to institute such proceedings on the notes and mortgage in question as he may be advised. And now plaintiffs allege error as follows: "That his Honor erred in affirming the master's order dismissing the complaint in this action, but should have allowed the same to be continued in the name of the original party, the plaintiff, C. G. Matthews & Co. Plaintiffs' right to bring this action is not, and could not, be questioned. Their right to continue the action is the only point in issue. It will be borne in mind, also, that the facts upon which it is contended plaintiffs cannot continue this action, occurred after the commencement of the action. Now we know that, under the Code, facts occurring after the commencement of an action should be brought before the Court by supplemental complaint or answer, as the case may be. Code, sec. 198. This is the usual and orderly mode of shaping the pleadings so as to make admissible the evidence of such facts. But in the case at bar the facts relied on came out for the first time on the trial of the cause, and constituted a part of the evidence of the plaintiffs. So far as appears, the evidence was received without objection. It, therefore, cannot now be urged, in behalf of the plaintiffs, that before defendants can avail themselves of testimony offered by plaintiff, they should interrupt the progress of the trial and move for leave to file a supplemental answer alleging such facts. The Code, sec. 197, provides: "The Court shall, in every stage of action, disregard any error or defect in the pleadings or proceedings, which shall not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect." If, therefore, it be conceded that the orderly mode of bringing such facts to the Court's attention was by a supplemental answer on the part of the defendant setting up such facts, this Court will not reverse the judgment below for such error unless some substantial right of the plaintiff has been affected, especially in view of the

fact that the plaintiffs themselves put the facts in evidence.

In considering this question we must bear in mind the full import of the admitted facts. It is conceded that the plaintiffs have been paid in full the debt for which the notes and mortgage were pledged as collateral, and the further important fact that plaintiffs have no longer any interest in the note and mortgage. What is one of a pledgee's interests in the pledged collateral? Manifestly he has interest in the collateral, not only to the extent of the payment of the debt secured thereby, but also to the extent of the proper costs incurred in a suit to collect collateral. If, therefore, a pledgee after suit brought on the collateral has not only been paid the principal debt, but has no longer any interest in the collateral, it must be assumed, in the absence of any evidence contradictory, that the pledgee has amply protected himself in the matter of costs, as he had an undoubted right to do before yielding all interest in the collateral. There is, therefore, not the slightest room in this case for the view that it was error to dismiss the complaint without providing for the payment of costs incurred by plaintiffs in this case. If plaintiffs had shown that while the debt secured by the collateral had been paid, the costs incurred by them in the suit on the collateral had not been paid, and for this reason were insisting on realizing on the collateral for this purpose, a different question might have been presented.

Appellant's contention is that this case is controlled by section 142 of the Code, while respondents contend that it is controlled by section 132. The difficulty arises in the construction and application of these sections of the Code. Section 142, so far as relates to this controversy, is as follows: "No action shall abate by the death, marriage or other disability of a party, or by the transfer of any interest therein, if the cause of action survive or continue. In case of death, marriage or other disability of a party, the Court, on motion, at any time within one year thereafter, or afterwards on a

supplemental complaint, may allow the action to be continued by or against his representative or successor in interest. In case of any other transfer of interest, the action shall be continued in the name of the original party, or the Court may allow the person to whom the transfer is made to be substituted in the action." This section then goes on to make other provisions in reference to abatement of actions in case of death, marriage or other disability. What is meant by "any other transfer of interest?" It must mean such a transfer of interest in the action (not including those arising from death, marriage or other disability), as would enable the transferee to claim *under the original party.* This is involved in the idea of allowing the party to whom the transfer is made to be substituted for the original party. The transferee, under this section, must derive his title or interest from or under the original party. Now, Philpot took no transfer from plaintiffs, he takes his interest directly from the pledgers, All, jr., & Co., who, at the time of their transfer to Philpot, had satisfied all the claims of the plaintiffs in the collateral. There is no evidence whatever that plaintiffs have made themselves parties to the notes, by endorsement or otherwise. Having no longer any interest in the collateral, they had nothing to transfer to Philpot. It cannot be said that plaintiffs, as trustees, are accountable to the parties entitled for the proceeds of the collaterals, and had a right to proceed in their own name to collect the collateral, and pay over proceeds to party entitled, for this would be inconsistent with the conceded fact that they *no longer had any interest whatsoever in the notes and mortgage.* Under circumstances of this kind, we must give effect to the imperative requirement of section 132, which requires that "Every action must be prosecuted in the name of the real party in interest, except as otherwise provided in section 134, &c.," which allows an executor or administrator, a trustee of an express trust, or a person expressly authorized by statute to sue without joining with him the person for whose benefit the action is prosecuted. It will

be noted that the language is *"prosecuted,"* not simply *brought or sued.* This implies that the suit must be brought and continued in the name of the real party in interest, except as provided in section 134. The expression of exceptions to this positive requirement, would seem to exclude the idea that there are other exceptions.

But, beyond this, we repeatedly ruled that before a judgment of a Circuit Court can be overthrown in this Court, it must not only appear that there was error, but the error must be prejudicial to the rights of the party complaining. It is impossible, from the facts of this case, to see how, even if there were any error, the plaintiffs have been harmed in the slightest. Having no interest whatever in this lawsuit, we cannot see why they should insist on keeping it alive in this manner, after defeating the effort to substitute the real party in interest. No one else is complaining. The defendants are satisfied, and the rights of the real party in interest are without prejudice.

The judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE MCIVER, *dissenting.* Not being able to concur in the conclusion reached by Mr. Justice Jones, I propose to state, as briefly as practicable, the grounds of my dissent. The undisputed facts are, that the defendant, Sallie R. Cantey, on the 14th of November, 1893, borrowed from Ida All the sum of $700, for which she gave her three promissory notes, each for the sum of $233.33, payable, respectively, on the 1st of October, 1894, 1895, and 1896; and to secure the payment of the several sums of money mentioned in said notes she executed a mortgage on a tract of land, her separate estate; that before the maturity of said notes the said Ida All endorsed and delivered the same to W. A. All, jr., & Co.; that the said W. A. All, jr., & Co., before the maturity of the said notes, endorsed and delivered the same to the plaintiffs as collateral security for the payment of "advances made or to be made by plaintiffs to said firm," W. A. All, jr., & Co.; that afterwards, but at

38—48

what particular time does not appear, the said W. A. All, jr., & Co. "assigned said notes and mortgage for value to one Thomas Philpot," subject to the assignment to plaintiffs, the said notes and mortgage being still in the possession of plaintiffs or their attorney; that after the first of the above mentioned notes became payable, to wit: on the 6th of May, 1895, this action was commenced for the foreclosure of the mortgage, the complaint being in the usual form for that purpose; that after the commencement of the action, the debt, for which said notes and mortgage were transferred to the plaintiffs as collateral security, was paid. These facts are all obtained as well from the report of the master, to whom it was referred to hear and determine all the issues in the case, as from the order of his Honor, Judge Aldrich, sustaining an exception to a previous report of the master upon a point not now pertinent to the question raised by this appeal; inasmuch as it is stated in the "Case," as prepared for argument here, that: "It is further agreed, that the statement of the case contained in the order of Judge Aldrich be adopted as an agreed statement for the purposes of this appeal." When the case was remanded to the master by the order of Judge Aldrich, another reference was held, at which defendants moved that the complaint be dismissed, or that Philpot be made a defendant. The master ruled that the debt due the plaintiffs having been paid, they were not the real parties in interest, but that Philpot was the real party in interest, and as it had been held by Judge Aldrich that Philpot could not be substituted as plaintiff, as he had not asked to be so substituted, and, without ruling upon the alternative presented by defendants' motion, that Philpot be made a party defendant, he held that the plaintiffs could not maintain the action, and ordered that the complaint be dismissed. To this report plaintiffs excepted, upon the grounds set out in the "Case," whereupon his Honor, Judge Benet, granted an order confirming the report of the master, "without prejudice to the real party in interest to institute such proceedings

on the notes and mortgage in question as he may be advised." From this order plaintiffs appeal, upon the ground set out in the record.

It seems to me that both the master and the Circuit Judge, as well as Mr. Justice Jones, have failed to give due significance and effect to the admitted fact that the debt due plaintiffs was paid *after the commencement of this action.* So far as appears from the "Case," it cannot be doubted that, *when this action was commenced,* the plaintiffs had a perfectly good cause of action, and a clear right to maintain this action. They were *bona fide* holders of negotiable notes transferred to them before maturity, and as such had all the rights incident to that position. The fact that the notes were transferred to them as collateral security for a debt due them by their endorsers, W. A. All, jr., & Co., does not deprive them of the rights of innocent holders for value, or in any way affect their rights, as is abundantly shown by the passage quoted from Story on Promissory Notes, sec. 195, quoted with approval in *Dearman* v. *Trimmier*, 26 S. C., at page 511, and the other authorities there cited. Occupying, then, that position, I am unable to discover anything in the "Case" which would defeat or in anywise impair their right to recover at the time they commenced this action.

It is contended, however, that by the payment of the debt, for which the plaintiffs held these notes as collateral security, they are now no longer the real parties in interest, and, therefore, cannot maintain this action. But as the conceded fact is, that such payment was made after the commencement of the action, it is manifestly a case in which a party is seeking to avail himself of a defense resting upon facts occurring after the action was commenced. In such a case, under the former system of pleading, the defense could only be interposed by a plea *puis darrein continuance*, and the settled rule was that such a plea could only be allowed upon payment of all costs incurred up to the time of the filing of the plea. *Jones* v. *Griffin*, 1 Strob., 31. See, also, *Elms* v. *Beers*, 3 McC., at page 9, where the

same rule was recognized. The same rule has been recognized since the adoption of the Code of Procedure, in *State* v. *Moses*, 20 S. C., at page 468; for while, under the new system of pleadings, all the old forms of pleading have been abolished, and hence a formal plea *puis darrein continuance* is not now either necessary or proper, yet the same result may be accomplished by a supplemental answer (Code, sec. 198), to which the same rule applies as to payment of costs, as it is founded upon the plainest principles of justice; for, certainly, it would not be just or right to mulct a party in costs, who had a good cause of action when the suit was commenced, because something has occurred since the commencement of the action which affords the defendant a good defense, either partial or total, and which, under the rules of pleading, he is allowed to set up; and this is what I understand the Court to mean when it was said, in *State* v. *Moses, supra:* "The application was, in effect, for leave to plead *puis darrein continuance*, and such leave will generally be granted upon a proper showing, but it should always be upon payment of costs." It seems to me, therefore, that the plaintiffs should still be regarded as the real parties in interest, at least so far as their right to recover their costs is concerned, if no further.

But, in addition to this, it seems to me that the cause of action still continued in favor of the plaintiffs, notwithstanding the payment of the debt to plaintiffs; for it must be kept in mind, that the debt which has been paid was not the debt evidenced by the notes upon which this action is based; for, of course, if *that* debt had been paid, *no one* could maintain an action for its recovery. But the debt, which has been paid, being the debt to plaintiffs, for which the notes were transferred to them as collateral security, there is no doubt that the right of action for the recovery of the debt, evidenced by the notes, still continued in favor of some one, and the question is, who? It seems to me that such question is answered by the provisions of sec. 142 of the Code, which appears to have been enacted to meet just

such a case as this is. So much of that section as relates to the matter here under consideration, reads as follows: "No action shall abate by the death, marriage or other disability of a party, or by the transfer of any interest, if the cause of action survive or continue;" and after providing what shall be the course of proceeding in case of the death, marriage or other disability of a party, the section proceeds in these words: "In case of any other transfer of interest, the action shall be continued in the name of the original party, or the Court may allow the person to whom the transfer is made to be substituted in the action." So that, where pending an action to recover a debt evidenced by a note, such note has been transferred to a third person, the action shall be continued in the name of the original party, or the Court may allow the person to whom the transfer has been made substituted as plaintiff, provided the cause of action continues. It will be observed that the language is: "If the cause of action * * * continue"—*not* if it continue *in the original plaintiff*—but if it continue. Now, to construe this provision as if the words italicized in the preceding line were in the section, would be to render the provision wholly nugatory and totally unnecessary; for if the cause of action continued in the *original plaintiff*, then where would be the necessity for the provision? In such a case the action could be continued in the name of the original plaintiff without any such provision. It seems to me, therefore, that the real object and true meaning of the section was to authorize the continuance of an action in the name of the original plaintiff, even though his interest in the cause of action may have been transferred, pending the action, to some third person, provided the cause of action continued in such transferee. This view is made more manifest by the language used in the last sentence of the section, which necessarily implies that the action shall be continued in the name of the original plaintiff, even though he may, pending the action, have parted with his interest in the cause of action; and the concluding clause of that

sentence strengthens this implication, for how could the transferee be allowed to be substituted as plaintiff, if the cause of action still continued in the original plaintiff?

I am satisfied that the true construction of section 142 of the Code is, that where, pending an action, the cause of action has been transferred to some third person, the action may be continued in the name of the original plaintiff, notwithstanding such transfer, provided the cause of action continues in favor of the transferee, or the Court "may allow" such transferee to be substituted as plaintiff. This implies that the transferee shall apply for such substitution; and if he makes no such application, then the provision is, that the action "*shall* be continued" in the name of the original plaintiff—that is to say, the action *shall* be continued in the name of the original plaintiff—unless the transferee applies to be substituted, when the Court "*may* allow" such substitution. If it should be said that it does not appear that the assignment to Philpot was made after the action was commenced, the conclusive answer would be, that the admitted fact is, that "the assignment of All & Co. to Philpot was made *subject to the assignment to plaintiffs;*" and, therefore, the assignment to Philpot must in law be regarded as made and as taking effect when the debt of All & Co. to plaintiffs was paid, and this is conceded to have been after the commencement of the action.

I think, therefore, that the judgment of the Circuit Court should be reversed, and the action should have been continued in the name of the plaintiffs. But, in any view of the matter, I am satisfied that it was error to dismiss the complaint, except upon payment of plaintiffs' costs.